COURT OF APPEALS
DECISION
DATED AND FILED

May 29, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2021AP1350-CR**
**2021AP1351-CR**

Cir. Ct. Nos. 2015CF479
2016CF686

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

　PLAINTIFF-RESPONDENT,

V.

DANTE ROBERT VOSS,

　DEFENDANT-APPELLANT.

---

　　　　APPEALS from an order and judgments of the circuit court for Marathon County: GREGORY B. HUBER, Judge. *Affirmed in part; reversed in part and cause remanded with directions*.

　　　　Before Stark, P.J., Hruz and Gill, JJ.

　　　　**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Dante Robert Voss, pro se, appeals from judgments, entered pursuant to his guilty and no-contest pleas, convicting him of various offenses and from an order denying his postconviction motion without an evidentiary hearing.  Voss raises numerous issues on appeal.  We affirm the circuit court's denial of Voss's postconviction motion without a hearing on all but two grounds.

¶2     On the first ground, we conclude Voss sufficiently alleged in his postconviction motion that he did not knowingly, intelligently, and voluntarily enter his plea because the circuit court understated at Voss's plea hearing the maximum potential punishment he could face.  On this issue, we reverse and remand with directions for the court to hold a *Bangert*[1] hearing.  On the second ground, we conclude that Voss is entitled to one day of sentence credit on his convictions in both Marathon County case Nos. 2015CF479 and 2016CF686, and we reverse and remand with directions that the court amend the judgments of conviction to reflect the additional sentence credit.

## BACKGROUND

¶3     Voss entered into a global plea agreement to resolve four Marathon County criminal cases.  In Marathon County case Nos. 2015CF479 and 2016CF686, Voss agreed to plead guilty or no contest to two counts of felony bail jumping, both as a repeater, one count of physical abuse of a child (recklessly causing bodily harm), one count of a felon in possession of a firearm, and one count of disorderly conduct with the use of a dangerous weapon, as a domestic

---

[1] *See* *State v. Bangert*, 131 Wis. 2d 246, 268-69, 389 N.W.2d 12 (1986).

abuse repeater, and with the domestic abuse enhancer. In return, the State agreed to recommend that the circuit court dismiss and read in the remaining counts in both cases, and that it dismiss and read in all of the counts in Marathon County case Nos. 2015CF644 and 2015CF831. Furthermore, the State agreed to recommend a period of initial confinement of no more than seven years total, to run concurrent to an unrelated sentence Voss was then serving.

¶4      At the plea hearing, the parties explained to the circuit court the global plea agreement as outlined above. Voss's trial counsel submitted a signed plea questionnaire and waiver of rights form to the court. On the record, the court confirmed with Voss that he had sufficient time to review the plea questionnaire and waiver of rights form with his trial counsel. The court then went through the various constitutional consequences of Voss's pleas, including the rights Voss was waiving by entering his pleas. Voss also stated that he understood the elements of the charges to which he was pleading and that the dismissed counts were being read in at sentencing. He also confirmed that he was voluntarily entering the pleas. Relying on the plea questionnaire and waiver of rights form, the court stated, "I could give you the maximum penalties here, which would total, if your attorney has got the math right, 31 years in prison and $56,000 worth of fines," to which Voss responded that he understood. The court accepted Voss's pleas, granted the State's motion to dismiss and read in the remaining counts, and ordered a presentence investigation report (PSI).

¶5      At the sentencing hearing, following arguments from the parties and Voss's exercise of his right to allocution, the circuit court imposed various sentences for each count, none of which exceeded an initial confinement term of seven years. The court ordered that the sentences in the two cases run concurrent to each other and concurrent to the unrelated sentence Voss was then serving.

3

Voss also received sentence credit in Marathon County case Nos. 2015CF479 and 2016CF686.

¶6 Voss filed a notice of intent to pursue postconviction relief, and he was appointed postconviction counsel. Afterward, Voss's postconviction counsel filed a motion to withdraw as Voss's attorney, stating that he and Voss disagreed about whether to pursue a particular issue on appeal and that Voss sought to discharge his counsel and pursue his appeal pro se. Following a hearing, the circuit court permitted Voss's postconviction counsel to withdraw.

¶7 Voss filed a pro se motion for postconviction relief. The circuit court denied Voss's motion without a hearing. Voss now appeals both the judgments of conviction and the order denying his motion for postconviction relief.[2] Additional facts will be provided as necessary below.

## DISCUSSION

¶8 Whether a circuit court properly denied a defendant's postconviction motion without an evidentiary hearing presents a mixed standard of appellate review. *State v. Ruffin*, 2022 WI 34, ¶26, 401 Wis. 2d 619, 974 N.W.2d 432. We independently determine whether a defendant's postconviction motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief and whether the record conclusively demonstrates that the defendant is entitled to no relief. *Id.*, ¶27. "If the motion does not raise facts sufficient to entitle the defendant to relief, or if it presents only conclusory allegations, or if the record

---

[2] We granted Voss's motion to consolidate his appeals for Marathon County case Nos. 2015CF479 and 2016CF686.

conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." ***Id.***, ¶28.

## I.   Plea withdrawal motion

¶9      "When a defendant moves to withdraw [a] plea after sentencing, the defendant 'carries the heavy burden of establishing, by clear and convincing evidence, that the [circuit] court should permit the defendant to withdraw his plea to correct a manifest injustice.'"  ***State v. Sulla***, 2016 WI 46, ¶24, 369 Wis. 2d 225, 880 N.W.2d 659 (citation omitted).  A defendant can meet the manifest injustice standard by showing that he or she "did not knowingly, intelligently, and voluntarily enter the plea," ***id.*** (citation omitted), that his or her counsel was ineffective, ***State v. Cain***, 2012 WI 68, ¶26, 342 Wis. 2d 1, 816 N.W.2d 177, or that newly discovered evidence exists, ***State v. Ferguson***, 2014 WI App 48, ¶24, 354 Wis. 2d 253, 847 N.W.2d 900.[3]

### A.   Knowing, intelligent, and voluntary—maximum sentence

¶10      Voss's postconviction motion alleged that his pleas were not entered knowingly, intelligently, and voluntarily because the circuit court failed to advise Voss that he potentially faced "39.5 years in prison," not 31 years as the court stated at the plea hearing.  The court relied on the plea questionnaire and waiver of rights form to advise Voss of the potential punishment he could face for his pleas,

---

[3] "Two legal paths are available to a defendant who seeks to withdraw his [or her] plea after sentencing." ***State v. Sulla***, 2016 WI 46, ¶25, 369 Wis. 2d 225, 880 N.W.2d 659. The first is through a motion made pursuant to ***Bangert***, where the defendant alleges that the plea colloquy was defective. ***Sulla***, 369 Wis. 2d 225, ¶25. The second is through a motion made pursuant to ***Nelson v. State***, 54 Wis. 2d 489, 195 N.W.2d 629 (1972), and ***State v. Bentley***, 201 Wis. 2d 303, 548 N.W.2d 50 (1996), where the defendant alleges "that some factor extrinsic to the plea colloquy, like ineffective assistance of counsel or coercion, renders a plea infirm." ***Sulla***, 369 Wis. 2d 225, ¶25 (citation omitted).

stating, "I could give you the maximum penalties here, which would total, if your attorney has got the math right, 31 years in prison and $56,000 worth of fines." That number incorrectly excluded eight years and nine months from Voss's potential sentences—eight years for the repeater enhancers for his pleas to the two felony bail jumping charges; six months for his plea to the physical abuse of a child charge; and ninety days for his plea to the disorderly conduct charge.[4] According to Voss, he was unaware of the correct maximum penalties.

¶11 The State does not disagree that Voss was advised of the incorrect potential imprisonment at the plea hearing. Rather, the State argues that the circuit court's understatement of Voss's potential imprisonment was "essentially meaningless" because "what the court told Voss was the maximum and the actual maximum were both 'substantially higher than' the State's recommendation for a seven-year cap on the confinement," which the court ultimately imposed.

¶12 "Wisconsin imposes certain statutory and common law duties on circuit courts to ensure that a defendant's plea is given knowingly, intelligently, and voluntarily." *State v. Pegeese*, 2019 WI 60, ¶21, 387 Wis. 2d 119, 928 N.W.2d 590. A circuit court at a plea hearing must, among other things, "[a]ddress the defendant personally and determine that the plea is made voluntarily with understanding of … the potential punishment if convicted." *See* WIS. STAT. § 971.08(1)(a) (2021-22);[5] *Bangert*, 131 Wis. 2d at 260. A court's

---

[4] As the circuit court noted in its decision denying Voss's postconviction motion, the total imprisonment time Voss potentially faced was actually thirty-nine years and nine months, not thirty-nine and one-half years as alleged by Voss.

[5] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

duties at a plea hearing "are designed to ensure that a defendant's plea is knowing, intelligent, and voluntary." *State v. Taylor*, 2013 WI 34, ¶30, 347 Wis. 2d 30, 829 N.W.2d 482 (citation omitted).

¶13    "If [a] court fails to fulfill one of the duties … the defendant may move to withdraw his [or her] plea." *Id.*, ¶32.   A defendant is entitled to a *Bangert* hearing if he or she: (1) makes a prima facie showing of a violation of WIS. STAT. § 971.08 or another court-mandated duty; and (2) alleges that he or she did not, in fact, know or understand the information that should have been provided during the plea colloquy. *Taylor*, 347 Wis. 2d 30, ¶32.

¶14    "[W]hen the defendant is told the sentence is lower than the amount allowed by law, a defendant's due process rights are at greater risk and a *Bangert* violation may be established." *Taylor*, 347 Wis. 2d 30, ¶34 (citation omitted). However, "'a defendant's due process rights are not necessarily violated when he [or she] is incorrectly informed of the maximum potential imprisonment,' and in some cases, 'small deviations' from the *Bangert* line of cases do not amount to a *Bangert* violation." *Taylor*, 347 Wis. 2d 30, ¶33 (citation omitted).  The *Bangert* requirements exist as a framework, and our state supreme court has refused to "embrace a formalistic application of the *Bangert* requirements that would result in the abjuring of a defendant's representations in open court for insubstantial defects." *State v. Cross*, 2010 WI 70, ¶32, 326 Wis. 2d 492, 786 N.W.2d 64.

¶15    In *Taylor*, the defendant faced a maximum imprisonment term of eight years (which included two years for a repeater enhancer)—information that was accurately included in a plea questionnaire and waiver of rights form. *Taylor*, 347 Wis. 2d 30, ¶11 & n.6, ¶15.  At the defendant's plea hearing, however, the circuit court incorrectly stated that it could impose a maximum sentence of six

years' imprisonment. *Id.*, ¶16. The court "did not expressly inform [the defendant] that because of the repeater allegation, the potential maximum term of imprisonment was eight years." *Id.* The court ultimately sentenced the defendant to a six-year term of imprisonment. *Id.*, ¶17. The defendant filed a postconviction motion seeking to withdraw his plea, arguing that the plea colloquy was deficient "because it did not inform him of the maximum penalty" and "he did not know the correct maximum penalty." *Id.*, ¶18. The court denied the motion without a *Bangert* hearing. *Taylor*, 347 Wis. 2d 30, ¶20.

¶16 On appeal, our state supreme court held that "the fact that the circuit court did not verbally discuss the additional two-year term of imprisonment at the plea hearing, while not ideal," did not "automatically trigger" a *Bangert* hearing. *Taylor*, 347 Wis. 2d 30, ¶44. Rather, "the defendant's plea was entered knowingly, intelligently, and voluntarily [because] the record makes clear that the defendant knew the maximum penalty that could be imposed *and* was verbally informed at the plea hearing of the penalty that he received." *Id.*, ¶8 (emphasis added). The court in *Taylor* therefore held that a *Bangert* hearing is not required if: (1) the "record makes clear" that the defendant knew the actual maximum penalty that could be imposed; and (2) the circuit court incorrectly informed the defendant of a penalty lower than what the court could actually impose, but it later sentenced the defendant within the range stated during the plea hearing. *See State v. Finley*, 2016 WI 63, ¶¶80, 85, 95, 370 Wis. 2d 402, 882 N.W.2d 761.

¶17 As to the first requirement, the court in *Taylor* determined that the record conclusively demonstrated that the defendant was aware of the correct potential imprisonment he faced as evidenced by his bail and preliminary hearings, the complaint, the Information, and a plea questionnaire and waiver of rights form. *Taylor*, 347 Wis. 2d 30, ¶¶35-39. All of the aforementioned documents accurately

informed the defendant of the imprisonment time he faced. *Id.*, ¶¶35, 38. Similarly, at the bail hearing, the defendant was informed of the repeater enhancer. *Id.*, ¶36. At his preliminary hearing, the defendant stated that he read the complaint. *Id.* As to the second requirement, the court held that the circuit court imposed a sentence it stated it could impose—a six-year term of imprisonment. *Id.*, ¶28. Stated differently, the "circuit court verbally informed [the defendant] of the six-year term of imprisonment to which he was ultimately sentenced." *Id.*

¶18    The second *Taylor* requirement is met here—namely, the circuit court verbally informed Voss at the plea hearing of potential sentences totaling over thirty years' imprisonment, and the court actually imposed significantly lower sentences totaling ten years' imprisonment. However, the first *Taylor* requirement is not met in this case.[6] The complaints and Informations filed in Marathon County case Nos. 2015CF479 and 2016CF686 correctly identified the maximum potential punishment that Voss faced. That being said, Voss waived the readings of both documents during each case's respective initial appearance and arraignment. Aside from the plea hearing, the court did not discuss the charges or potential sentences with Voss at any point.[7]

---

[6] We note that the circuit court did not make any factual findings in its postconviction decision regarding Voss's actual knowledge of the maximum potential sentence.

[7] At Voss's sentencing hearing, the State informed the circuit court that the plea questionnaire and waiver of rights form—and, therefore, the court's plea colloquy with Voss—incorrectly omitted the felony bail jumping repeater enhancers. The State correctly articulated to the court that the actual imprisonment time for each those offenses totaled ten years, not six years as was stated in the form and by the court. After the State's comments, the court did not discuss the issue with Voss or his attorney, and it proceeded to sentencing. Because this revelation came after Voss entered his pleas, and because the court did not revisit the issue with Voss after learning of the correct maximum sentences on those two charges, the State's comments do not have any impact on our analysis.

9

¶19    Importantly, unlike in *Taylor*, the plea questionnaire and waiver of rights form signed by Voss and relied on by the circuit court at the plea hearing understated the potential imprisonment time that Voss faced by over eight years.[8] Under these circumstances, Voss adequately alleged a *Bangert* violation in his postconviction motion, and he is entitled to a *Bangert* hearing to determine whether the State can demonstrate by clear and convincing evidence that Voss, in fact, knew and understood the actual potential imprisonment time that he faced when he entered his pleas.[9]

---

[8] Voss also alleged in his postconviction motion that he should be permitted to withdraw his pleas because his trial counsel was constitutionally ineffective by inaccurately informing him that he faced a maximum imprisonment term of thirty-one years and that he is therefore entitled to a *Nelson/Bentley* hearing.

We need not address whether the allegations in Voss's postconviction motion "are sufficient under *Nelson/Bentley* to entitle [Voss] to an evidentiary hearing" on his ineffective assistance claim regarding the maximum term of imprisonment. *See State v. Howell*, 2007 WI 75, ¶81, 301 Wis. 2d 350, 734 N.W.2d 48.  This particular ineffective assistance claim "raises the same legal issue as [Voss's] *Bangert* claim, namely that his plea was not knowing, intelligent, or voluntary because he misunderstood" the maximum imprisonment period.  *See Howell*, 301 Wis. 2d 350, ¶81.  Therefore, under the facts of this case, whether Voss was prejudiced by his trial counsel's deficient performance would necessarily depend on whether he understood the maximum imprisonment time he faced—a question on which we reverse the circuit court's order in part and remand pursuant to *Bangert*.  *See Bentley*, 201 Wis. 2d at 311-12, 316.

[9] Voss argues that the proper remedy is either commuting his sentences to the "maximum penalties he was told" or reducing the length of his extended supervision.  We disagree.  "[I]f a defendant is given a sentence greater than that authorized by law, … the proper remedy for that error is to commute the sentence, not plea withdrawal." *State v. Taylor*, 2013 WI 34, ¶45 n.13, 347 Wis. 2d 30, 829 N.W.2d 482.  Here, however, Voss was given a total imprisonment sentence that was lower than the maximum allowed by law.  Furthermore, Voss's first proposed remedy would actually extend one of his current sentences.  Under these circumstances, remanding for a *Bangert* hearing is the appropriate remedy.

(continued)

B.   <u>Knowing, intelligent, and voluntary—factual basis for repeater enhancers</u>

¶20   Voss claimed in his postconviction motion that the circuit court failed to establish a factual basis for the felony bail jumping repeater enhancers. At a plea hearing, a circuit court must "[a]scertain personally whether a factual basis exists to support the plea." *Cross*, 326 Wis. 2d 492, ¶18 (citation omitted); *see also* WIS. STAT. § 971.08(1)(b). This requirement dictates that the *court* personally determine that a factual basis exists to support the plea. *State v. Thomas*, 2000 WI 13, ¶20, 232 Wis. 2d 714, 605 N.W.2d 836.

¶21   We conclude that the circuit court adequately established a factual basis for the felony bail jumping repeater enhancers. As relevant here, a defendant is a repeater if he or she "was convicted of a felony during the 5-year period immediately preceding the commission of the crime for which the [defendant] presently is being sentenced." *See* WIS. STAT. § 939.62(2). At the plea hearing, the court asked Voss's trial counsel to explain the basis for the repeater enhancers. Counsel explained:

> With regard to the felon in possession of a firearm, it's my understanding what was alleged in the [c]omplaint was that [Voss] was convicted of operating a motor vehicle with a prohibited alcohol concentration of greater than .02 percent as a fifth offense or higher, and we agreed that that conviction remains unreversed and is an appropriate prior count.

---

At the ***Bangert*** hearing, the State has the burden to prove by clear and convincing evidence that Voss's pleas, despite the inadequacy of the plea colloquy, were knowing, intelligent, and voluntary. *See **Taylor***, 347 Wis. 2d 30, ¶32. The State may use "any evidence" at the hearing to prove this standard, including any documents in the record and testimony of Voss or his trial counsel. *See **id.*** (citation omitted). If the State cannot meet its burden to prove by clear and convincing evidence that the plea was knowing, voluntary, and intelligent despite the deficiencies of the plea hearing, Voss is entitled to withdraw his pleas "as a matter of right." *See **State v. Finley***, 2016 WI 63, ¶95, 370 Wis. 2d 402, 882 N.W.2d 761 (citation omitted).

11

Voss's trial counsel was referring to Wood County case No. 2016CF72, in which Voss pled guilty to, and was convicted of, a felony count two months before he entered his pleas in the instant cases. Voss stated that he agreed with his counsel's statement regarding his previous felony conviction. The court accepted Voss's pleas after finding that "there is a factual basis for each" charge.[10]

¶22 The circuit court could rely on trial counsel's statement and the criminal complaint in Marathon County case No. 2016CF686 (which was referenced by the parties) to establish a factual basis for the repeater enhancers. *See* ***Thomas***, 232 Wis. 2d 714, ¶20 ("All that is required is for the factual basis to be developed on the record—several sources can supply the facts."). Therefore, Voss failed to establish that a ***Bangert*** violation occurred with respect to the factual basis for the repeater enhancers, and the court did not erroneously exercise its discretion by denying him an evidentiary hearing on this claim.

C.   Newly discovered evidence

¶23 Voss claimed in his postconviction motion that newly discovered evidence warrants plea withdrawal. As relevant here, "[f]or newly discovered evidence to constitute a manifest injustice and warrant the withdrawal of a plea," four criteria must be met: "(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative." *See* ***Ferguson***, 354 Wis. 2d 253, ¶24. If a defendant demonstrates each of these

---

[10] In addition to Voss's felony conviction in Wood County case No. 2016CF72, the complaint in Marathon County case No. 2016CF686 also included records for another felony case—Wood County case No. 2015CF353—in which Voss pled no contest in January 2016 to felony bail jumping and possession of a firearm by a felon.

elements, "the circuit court must determine whether a reasonable probability exists that a different result would be reached in a trial." ***Id.***

¶24 In his postconviction motion, Voss alleged that after his sentencing a "physician informed him that his medications could have caused him to be involuntarily intoxicated" during the commission of the crimes underlying the charges in these cases. Voss claimed that the physician's statement was material to whether he could have asserted an involuntary intoxication defense to the charges to which he pled.

¶25 However, according to Voss's affidavit in support of his postconviction motion, Voss "had been stable with medication" for approximately ten years prior to the events underlying the charges in Marathon County case Nos. 2015CF479 and 2016CF686. He added, "Then, all of a sudden, I started having blackouts and violent mood swings, which included hallucinations, insomnia/mania, deep depression, suicidal ideation, and suicide attempts." According to Voss's affidavit, these symptoms persisted, and on the day of the facts giving rise to his charges in Marathon County case No. 2015CF479, Voss took his medications in the morning, "black[ed] out," and "c[ame] to" when he was in custody.

¶26 The allegations in Voss's affidavit, if taken as true, show that Voss was aware of his mental health issues, the symptoms associated with his change in behavior, and his medication history prior to entering his pleas. Voss therefore failed to demonstrate that the evidence was discovered after his convictions or that he was not negligent in seeking the evidence he now claims is newly discovered. Accordingly, Voss failed to sufficiently allege in his postconviction motion the

13

existence of newly discovered evidence that would warrant plea withdrawal. Consequently, Voss was not entitled to an evidentiary hearing on that claim.

## II. Ineffective assistance of counsel

### A. Plea withdrawal

¶27    Voss also alleged in his postconviction motion that he should be permitted to withdraw his pleas because his trial counsel was constitutionally ineffective in four ways.  To demonstrate ineffective assistance that would justify plea withdrawal, a defendant must allege that his or her trial counsel performed deficiently and that the deficiency prejudiced the defense.  *State v. Villegas*, 2018 WI App 9, ¶23, 380 Wis. 2d 246, 908 N.W.2d 198.  "If the defendant fails to satisfy either prong, we need not consider the other." *State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93.

¶28    As a general matter, to demonstrate prejudice, a defendant must show a reasonable probability that, absent counsel's alleged errors, the result of the proceeding would have been different.  *Id.*, ¶39.  More specifically, to demonstrate prejudice in the plea withdrawal context, a defendant must show that "there is a reasonable probability that, but for counsel's errors" the defendant would not have pled guilty or no contest "and would have insisted on going to trial." *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

¶29    First, Voss alleged that his trial counsel inaccurately informed him that the maximum possible initial confinement time for the felon in possession of a firearm charge was five years, not seven years.  Voss failed to demonstrate that he was prejudiced because he knew that the State would recommend seven years of initial confinement and that the circuit court could impose that amount of time.  In

14

fact, as the court stated at the plea hearing, it could have imposed far greater than seven years of initial confinement time on any number of combinations of the charges to which Voss had pled. The fact that Voss's trial counsel told him that he would face only five years of initial confinement on the felon in possession of a firearm charge does not change that fact. Under these facts, Voss failed to allege sufficient facts demonstrating that he would have gone to trial absent his trial counsel's alleged error, as opposed to entering guilty or no contest pleas.

¶30    Second, Voss alleged that "[p]rior to entering a plea, trial counsel never informed [him] that the State would need to prove that Voss actually possessed the weapon in question to facilitate the predicate offense of [d]isorderly [c]onduct." Voss contended that had he known that the dangerous weapon enhancer could apply only if he possessed the weapon in question to facilitate the disorderly conduct offense, he would not have entered a plea to the disorderly conduct charge *with* the dangerous weapon enhancer. However, Voss did not sufficiently allege prejudice because the circuit court imposed a two-year sentence (one year of initial confinement and one year of extended supervision) on that count. Even without the dangerous weapon enhancer, the term of imprisonment imposed on that count was within the range of punishment for disorderly conduct as a domestic abuse repeater. *See* WIS. STAT. § 939.621(2) (increasing the punishment by two years of imprisonment).

¶31    Third, Voss alleged that his trial counsel never investigated his prior convictions underlying the domestic abuse repeater enhancer even though Voss informed his counsel that he was never convicted in those cases. However, Voss would have known that his trial counsel did not investigate the previous convictions before entering his plea to the disorderly conduct charge. Moreover, nothing in the Voss's postconviction motion suggests that he felt pressured to

15

enter his plea to the disorderly conduct charge due to his counsel's failure to investigate his previous convictions. He therefore cannot show that counsel's purported failure to investigate his prior convictions would have resulted in him insisting on going to trial.

¶32    Fourth, Voss alleged that his trial counsel inaccurately informed him that the dismissed and read-in charges from Marathon County case No. 2015CF644 were not admissions of guilt. Read-in charges are not admissions of guilt, and thus counsel's failure to advise him of the incorrect law is obviously not deficient performance.[11] *See State v. Straszkowski*, 2008 WI 65, ¶¶92-94, 310 Wis. 2d 259, 750 N.W.2d 835.

¶33    For all of these reasons, Voss was not entitled to a hearing on his claim for plea withdrawal based on the alleged ineffective assistance of his trial counsel.

B.    Resentencing

¶34    Next, Voss argued in his postconviction motion that he is entitled to resentencing because his trial counsel was constitutionally ineffective in four ways. First, Voss alleged that his trial counsel failed to meet with him to prepare for the sentencing hearing. Voss, however, failed to allege prejudice. Specifically, he failed to allege what beneficial outcome would have come from meeting with his counsel prior to the sentencing hearing. At the hearing, Voss's

---

[11] At the sentencing hearing, the State commented that "insofar as accepting a resolution of this case, [Voss] admitted that he" engaged in the conduct described in a read-in offense. However, it is clear from the rest of the sentencing hearing transcript that Voss vehemently denied the allegations.

trial counsel made numerous corrections to the court-ordered PSI report, gave a lengthy sentencing argument, and Voss exercised his right of allocution. Under these circumstances, the allegations in Voss's postconviction motion do not show a reasonable probability that the result of Voss's sentencing would have been different had counsel met with Voss to prepare for the sentencing hearing.

¶35    Second, Voss alleged that his trial counsel failed to investigate Voss's mental health and medication history to provide evidence—including witness testimony—regarding mitigating factors at sentencing. "[A]n attorney's failure to investigate possible mitigating factors and present them at sentencing may, in some cases, constitute deficient performance." *State v. Harbor*, 2011 WI 28, ¶70, 333 Wis. 2d 53, 797 N.W.2d 828.

¶36    Voss asserts that had his trial counsel completed the proper investigation, it would have shown that Voss "voluntarily sought out help for the issues he was having," and "there would have been evidence refuting the State's assertion that Voss never took advantage of treatment." Voss's reference to the State's assertion is apparently an allusion to a statement from the court-ordered PSI, which reads, "Beginning at an early age, [Voss] has been offered treatment and intervention activities to assist him in making a positive change. [He] has not made the most of those opportunities to say the least." The PSI author's statement and Voss's claim that he voluntarily sought help are not mutually exclusive, and both appear to be supported by the record before the circuit court. The PSI author reviewed Voss's mental health and treatment history, which included Voss's medical diagnoses and medication treatment. Even if counsel provided witnesses or other information, Voss failed to allege how that additional information would have changed the outcome of the sentencing because the court did not determine that Voss had refused treatment in the past. In fact, the court found that Voss

required additional treatment despite the fact that he was historically "unsuccessful with treatment." Indeed, the court stated to Voss that it hoped Voss's sentence would "be a successful treatment period."

¶37    Third, while Voss's trial counsel hired an individual to conduct an alternative PSI, Voss alleged that counsel should have done so sooner. However, Voss failed to adequately allege what additional information would have been presented at his sentencing hearing if the alternative PSI author had additional time to complete the PSI. Voss merely alleged that the alternative PSI author "could do no real investigation," without specifying what that investigation would have revealed. Thus, Voss failed to demonstrate that he was prejudiced by the timing surrounding the alternative PSI.

¶38    Fourth, Voss alleged that his trial counsel failed to have "Voss examined by an independent psychologist" who would have concluded that Voss is not a psychopath, as the State asserted at sentencing. Voss argued that he was prejudiced by his trial counsel's failure to hire an independent psychologist because he "received the maximum concurrent sentence possible." The PSI noted that in 2003, Richard Hadfield, M.S., stated, "In all probability, [Voss] is a psychopath. This finding has implications for treatment and supervision, in that those evaluated as having the dimension of psychopathy are typically treatment resistant and in fact treatment methods need to be different than with the 'typical' clinical population." Voss's trial counsel argued at sentencing that this statement regarding psychopathy did not state that psychopaths cannot be treated, "but that we need to take into account the fact that their treatment needs are different."

¶39    We conclude that Voss failed to sufficiently allege that he was prejudiced by his trial counsel's failure to hire an independent psychologist. Even

if a psychologist were hired and opined that Voss is not a psychopath, it is not reasonably likely that the circuit court would have imposed lesser sentences. While the court commented on Voss's psychopathy diagnosis, the court's statements regarding Voss's diagnosis were made in reference to Voss's threat to the community, demonstrated by his lengthy criminal history—including his eleven probation revocations and violence toward others, his failure to successfully respond to past treatment attempts, and his general "antisocial behavior."[12] The court stated that a lengthy prison sentence was appropriate because "whatever your issues are … you are inflicting those problems on other people …. There's a lot going on here that needs to be addressed if you're to get back into the community and the community is to be safe." The court articulated that "protection of the community … is probably the paramount thing." In short, the court was more concerned with Voss's prior criminal history and unsuccessful attempts at treatment, behavior which the court explained partially through the psychopath diagnosis, than it was with the diagnosis itself. That is, even without the diagnosis, the court would have still been concerned with the protection of the community given Voss's history.

¶40    In all, Voss failed to demonstrate that he was entitled to resentencing because his trial counsel was constitutionally ineffective. Consequently, he was not entitled to a hearing on the ineffective assistance claims.

---

[12] In conveying its sentence, the circuit court stated, "What's concerning is the fact that you have been diagnosed as, in all likelihood, a psychopath, which carries with it unique challenges." The court added that treating psychopaths is "much more difficult and time consuming" and that it had to factor in Voss's diagnosis "because this is a revolving door here, and what's bad with the revolving door is when you get out, you do hurt other people."

19

### III. Sentence modification

¶41    Voss argued in his postconviction motion that he was entitled to sentence modification based on the existence of two new factors: (1) that he was sentenced based on inaccurate information because he is not a psychopath; and (2) his mental health issues demonstrate that he was less culpable for his crimes than the circuit court originally understood. "A new factor is one that was 'not known to the [circuit court] at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties.'" *Harbor*, 333 Wis. 2d 53, ¶57 (citation omitted).

¶42    For the same reasons articulated earlier, *see supra* ¶¶24-26, we conclude that Voss's mental health issues do not constitute a new factor. Prior to sentencing, Voss was aware of his mental health issues, the symptoms associated with his change in behavior, and his medication history. Therefore, Voss cannot demonstrate that his mental health issues were "unknowingly overlooked." In addition, the circuit court was aware of Voss's mental health issues because they were noted in the PSI. *See supra* ¶¶35-36. Even if the psychopathy diagnosis was a new factor, Voss would still need to demonstrate that the "new factor justifies modification of the sentence." *See Harbor*, 333 Wis. 2d 53, ¶37. For the same reasons articulated earlier, *see supra* ¶¶38-39, Voss failed to demonstrate that fact. Accordingly, Voss was not entitled to a hearing on his sentence modification claims.

### IV. Involuntary waiver of counsel

¶43    Voss also argued in his postconviction motion that his waiver of postconviction counsel was involuntary. "A defendant is entitled to counsel while

20

seeking relief through a postconviction motion under WIS. STAT. § 974.02 or a direct appeal." *State ex rel. Kyles v. Pollard*, 2014 WI 38, ¶23, 354 Wis. 2d 626, 847 N.W.2d 805. However, a defendant may waive that right so long as the waiver is knowingly, intelligently, and voluntarily made. *State v. Thornton*, 2002 WI App 294, ¶14, 259 Wis. 2d 157, 656 N.W.2d 45. Courts are required to provide certain warnings to a defendant who seeks to waive his or her right to counsel. *See id.*, ¶21.

¶44    In his postconviction motion, Voss did not contend that the circuit court failed to provide him the required warnings. Instead, Voss argued that he was forced to either proceed pro se or continue with his appointed postconviction counsel, even though Voss disagreed with that counsel's approach to Voss's case. In response to trial counsel's motion to withdraw, the Office of the State Public Defender informed the court that if Voss discharged his counsel, the agency would not reappoint another attorney. *See* WIS. STAT. RULE 809.30(4). The court then held a hearing to determine if Voss was waiving his right to counsel. At the hearing, Voss argued that he wanted his postconviction counsel to continue representing him but that Voss and counsel "disagree[d] on a legal theory."

¶45    We conclude that Voss's waiver of postconviction counsel was knowingly, intelligently, and voluntarily made. "While a defendant has the right to counsel on direct appeal, he does not have the right to counsel of his choice, or the right to insist that particular issues be raised." *State v. Evans*, 2004 WI 84, ¶30, 273 Wis. 2d 192, 682 N.W.2d 784, *abrogated on other grounds by State ex rel. Coleman v. McCaughtry*, 2006 WI 49, 290 Wis. 2d 352, 714 N.W.2d 900. Here, Voss's postconviction counsel wanted to proceed one way and Voss another. Voss could not dictate that his postconviction counsel proceed under Voss's theory on appeal. Thus, he could have either trusted his counsel or decided

to proceed pro se. He chose the latter option after a thorough colloquy by the circuit court, and his decision to do so was a valid waiver of counsel.[13]

## V. Additional sentence credit

¶46 Lastly, Voss argued in his postconviction motion that he is entitled to additional sentence credit. "A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed." WIS. STAT. § 973.155(1)(a). "A defendant seeking sentence credit in Wisconsin has the burden of demonstrating both 'custody' and its connection with the course of conduct for which the Wisconsin sentence was imposed." *State v. Carter*, 2010 WI 77, ¶11, 327 Wis. 2d 1, 785 N.W.2d 516.

---

[13] Voss relies on *United States v. Scott*, 909 F.2d 488 (11th Cir. 1990), in support of his position that he did not validly waive his right to postconviction counsel. *Scott* is factually distinguishable from the case at hand because that case dealt with defense counsel moving to withdraw from the defendant's case midtrial for "ethical" "reasons which she believed could not be disclosed to the [district] court." *Id.* at 489. The court "assumed that [defense counsel] made the motion because she discovered that [the defendant] intended to commit perjury." *Id.* at 492. After discussing the situation with the parties, the court forced the defendant to either proceed with his defense counsel "with the caveat that [the defendant] could be kept off the witness stand, if his attorney so desired, or to proceed pro se." *Id.* at 489. On appeal, the United States Court of Appeals for the Eleventh Circuit stated that the district court's assumption "was the result of speculation and conjecture" and that on appeal "[t]his court simply cannot determine from the record what the problem between counsel and client was." *Id.* at 492-93. The court concluded that "[t]o advise [the defendant] that he could be precluded from testifying, without confirmation that [he] intended to commit perjury, or could proceed pro se impermissibly forced [him] to choose between two constitutionally protected rights." *Id.* at 493 (footnote omitted).

Here, Voss was not confronted with choosing between two constitutionally protected rights. As explained, Voss did not have the "right to insist that particular issues be raised" by his postconviction counsel. *See State v. Evans*, 2004 WI 84, ¶30, 273 Wis. 2d 192, 682 N.W.2d 784, *abrogated on other grounds by State ex rel. Coleman v. McCaughtry*, 2006 WI 49, 290 Wis. 2d 352, 714 N.W.2d 900. He was presented with the choice of permitting his counsel to proceed under counsel's strategy or proceeding pro se.

¶47 The circuit court correctly denied all but one of Voss's claims for additional sentence credit. One claim alleged that Voss was entitled to sentence credit from September 22, 2015 (when Voss was arrested in an unrelated case and the court returned Voss's cash bail in Marathon County case Nos. 2015CF479 and 2015CF644 to the poster and issued body-only warrants) until January 28, 2016 (when those warrants were cancelled).[14] However, pursuant to ***State v. Friedlander***, 2019 WI 22, 385 Wis. 2d 633, 923 N.W.2d 849, Voss was not in "custody" in those two cases for purposes of WIS. STAT. § 973.155(1)(a) because he was not "subject to an escape charge for leaving the defendant's status." *See **Friedlander***, 385 Wis. 2d 633, ¶42. In other words, by Voss's own admission, the circuit court was still seeking to bring him back to court to address his bond in those cases.[15]

¶48 Moreover, three of Voss's claims alleged that he was entitled to additional sentence credit for dates for which the circuit court had already awarded credit. Another claim sought additional sentence credit for a period of time when Voss was admittedly in the community and, thus, not in custody.

¶49 An additional claim sought sentence credit for 180 days for a period of time from September 21, 2015, to March 18, 2018, when he was on probation in an unrelated case. According to Voss, "probation is not a sentence and,

---

[14] Voss did not allege in his postconviction motion that he was brought before the circuit court and had new bonds issued in Marathon County case Nos. 2015CF479 and 2015CF644 on or after January 28, 2016. We do note, however, that he was awarded sentence credit in Marathon County case No. 2015CF479 for the period from January 26, 2016, to February 1, 2016.

[15] Additionally, the circuit court previously awarded Voss sentence credit in Marathon County case No. 2015CF479 for the period of time from January 26, 2016, to February 1, 2016. Thus, Voss could not obtain additional credit in Marathon County case No. 2015CF479 for those dates.

therefore, jail time served as a condition of probation is not a sentence." We deem Voss's argument undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). His argument for additional sentence credit for this period lacks sufficient detail. According to Voss, he is entitled to 180 days of sentence credit, but he cites a period of time that spans over two years. Even addressing the merits of Voss's claim as we best understand it, Voss was sentenced in the cases at hand in December 2017, and he therefore began serving his sentences on that date. He would not be entitled to sentence credit for a period of time that began after he started serving his sentences in these cases. In addition, according to Voss, he began serving the probationary term in the unrelated case on January 13, 2016. It is unclear why Voss would be entitled to sentence credit for Marathon County case Nos. 2015CF479 and 2015CF686 for a period before or after January 13, 2016, when Voss does not allege he was in physical custody during that time frame (subject to the dates the circuit court already awarded sentence credit for).

¶50    Voss's remaining meritless claims sought additional sentence credit for periods of time after Voss began serving a prison sentence in an unrelated case on February 9, 2017, which is not permitted. *See State v. Beets*, 124 Wis. 2d 372, 380-81, 369 N.W.2d 382 (1985); *State v. Thompson*, 225 Wis. 2d 578, 583, 593 N.W.2d 875 (Ct. App. 1999).

¶51    However, as Voss argued in his postconviction motion, the circuit court did not consider the time Voss spent in custody in relation to the dismissed and read-in charges in Marathon County case No. 2015CF831 when assigning sentence credit. *See State v. Fermanich*, 2023 WI 48, ¶¶12-16, 407 Wis. 2d 693, 991 N.W.2d 340 (holding that a defendant's time in pretrial custody for dismissed and read-in charges must be counted toward sentence credit under WIS. STAT.

24

§ 973.155(1)(a)). Specifically, Voss alleged that he was in custody in Marathon County case No. 2015CF831 for one day on September 18, 2015. The State does not respond to Voss's argument with respect to credit for this day. *See **Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.***, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments may be deemed conceded).

¶52 The circuit court's only reason for denying Voss's postconviction motion for additional sentence credit was that it was "satisfied that the existing credit was correct." Given our state supreme court's ruling in ***Fermanich***, the circuit court did not provide a sufficient rationale to deny Voss's additional sentence credit. Finding no other basis to affirm the court's sentence credit decision, and based on the allegations in Voss's postconviction motion and the State's lack of a response to this particular argument, we reverse the court's decision denying the motion for additional sentence credit as it relates to Voss's September 18, 2015 claim, and we award Voss one day of additional sentence credit.[16]

*By the Court.*—Order and judgments affirmed in part; reversed in part and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[16] To the extent we do not address any other arguments made by Voss on appeal or in his postconviction motion, we deem them to be either incomprehensible or too inadequately developed to warrant a response. *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).